IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JACINTO GUZMAN SANTOS JR.,          §
Institutional ID No. 2016646,        §
                                     §
         Plaintiff,                  §
                                     §     CIVIL ACTION NO. 5:19-CV-165-BQ
v.                                   §
                                     §
CITY OF LUBBOCK, *et al.*,           §
                                     §
         Defendants.                 §

**FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Jacinto Guzman Santos Jr. brings this action

under 42 U.S.C. § 1983, alleging Defendant Lubbock Police Department (LPD) Officer Michael

Welty illegally seized and searched Santos and his car, unlawfully seized his property, and used

excessive force[1] in effectuating the traffic stop and arrest on March 15, 2018. Compl. 3–4, ECF

No. 1.[2] Santos further claims that the City of Lubbock, LPD Chief of Police Gregg Stevens, and

unnamed officers conspired with Officer Welty to violate his rights. *Id.* He seeks monetary

damages and the return of his seized property.

Santos filed his Complaint on August 14, 2019, and the United States District Judge

transferred this case to the undersigned United States Magistrate Judge for further proceedings.

ECF Nos. 1, 9. The undersigned thereafter reviewed Santos's Complaint, as well as authenticated

records provided by Lubbock County and City of Lubbock, and conducted an evidentiary hearing

---

[1] As discussed in more detail below, Santos also alleges excessive force against another unidentified officer.

[2] Page citations to Santos's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

1

on December 19, 2019, in accordance with *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). ECF No. 12.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotations omitted)).

2

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Background

### A.  Santos's Claims

Santos's Complaint names the following Defendants: (1) LPD Officer Michael Welty; (2) two unknown narcotics officers; (3) City of Lubbock; and (4) LPD Chief of Police Gregg Stevens. Compl. 3. Santos alleges that, during a traffic stop on March 15, 2018, Officer Welty pulled Santos out of his vehicle, "slammed [him] to the ground, and punched the sides of [his] face and back of [his] head as [Santos] layed [sic] faced [sic] down to the asphalt." *Id.* at 6–7. Santos further claims that Welty "falsified government documents and conspired against [Santos] with assisting officers," illegally searched Santos and his vehicle, and illegally seized Santos and the contents of his vehicle. *Id.* at 4. As for the other Defendants, Santos generically asserts that they "[c]onspired with Micheal [sic] Welty against Plaintiff." *Id.* at 3.[3]

### B.  Authenticated Records

The Court obtained authenticated records concerning Santos's claims from both Lubbock County and the City of Lubbock. These records indicate that, prior to his arrest, a Municipal Court Judge had issued two arrest warrants for Santos based on unpaid traffic citations. They further

---

[3] Based on Santos's *Spears* hearing testimony, as detailed below, the only other Defendant against whom he makes a specific claim, i.e., excessive force, is the one who, by pushing down on Santos's neck or upper torso, assisted Welty in making the arrest.

3

show that, following Santos's arrest, Officer Welty signed a probable cause affidavit[4] indicating that Santos committed a traffic violation, after which Welty activated his lights and siren to initiate a traffic stop. According to the probable cause affidavit, Santos continued traveling west on 50th Street for roughly two blocks and did not stop until another vehicle blocked Santos from continuing. Welty states that he "observed [Santos] reaching across the front passenger compartment" as he approached the vehicle and, as a result, removed Santos from the vehicle for officer safety. Thereafter, officers performed an inventory search of Santos's vehicle and discovered a digital scale with a substance that field-tested positive for methamphetamine.[5]

The records also contain after-incident reports from Officer Welty and Detective Mondragon. According to Welty's report, he responded to a call for assistance with a traffic stop for a vehicle that had been traveling northbound in the southbound lanes on Slide Road. Welty located the vehicle, moved his unmarked patrol car behind it and activated his lights, but the car did not stop. Welty activated his siren, yet the car still did not stop, so Investigator Christensen moved his undercover pickup truck in front of the vehicle and forced it to stop. Thereafter, Welty exited his vehicle and approached the driver's door. Welty reported seeing the occupant, later identified as Santos, "reaching around in the driver/passenger compartment," so he believed it was necessary to remove Santos from the vehicle to maintain officer safety. Welty stated that he opened the door, saw that Santos was not wearing a seat belt, and grabbed Santos's left arm to pull him from the vehicle, but Santos pulled back to remain in the vehicle. Per Welty, he was able to remove Santos from the vehicle and "guide[] [him] to the ground so he could be secured." Investigator Shirley arrived and assisted Welty in placing handcuffs on Santos, who was then held

---

[4] The affidavit states that it is based on Welty's "personal investigation of [the] offense."

[5] Santos claims he borrowed the car from his uncle.

in Detective Mondragon's custody while Welty and Shirley searched the vehicle for weapons. During this search, Welty discovered a digital scale, $190 in currency, and a substance that field-tested positive for methamphetamine. Welty's report concludes by stating that, although he did not observe Santos as having any serious injuries, because he complained of shoulder pain another officer took Santos to University Medical Center for treatment. The report further reveals that a warrant search following Santos's booking at Lubbock County Detention Center showed two pending warrants for Santos's arrest. An addendum to Welty's report indicates that an LPD officer observed Santos driving on the wrong side of the road, which led to the traffic stop.

Detective Mondragon's report states that he arrived at the traffic stop after Santos was already on the ground, and that it appeared to him Santos was resisting. Mondragon states that he held Santos's upper body and head to the ground to gain control of Santos as other officers applied handcuffs. After officers cuffed Santos, they took him to the curb where he sat while waiting for a transport vehicle. Upon another LPD officer's arrival, that officer took custody of Santos and walked him to the transport vehicle. While searching Santos's pockets, he found a large quantity of cash. According to Mondragon's report, the officer delivered the cash to Welty to be catalogued as evidence.

The records also include dashcam and bodycam video from Officers Welty and Dickson. Because Dickson arrived on-scene after the stop was completed and the search underway, the Court's analysis focuses on Welty's camera footage. Officer Welty's dashcam footage shows Welty accelerate to catch a silver Toyota Camry and then activate his lights and sirens shortly after pulling behind the Camry. For roughly twenty to thirty seconds, the Camry proceeds along the road with traffic in the right lane. As the Camry approaches a green traffic signal, it briefly accelerates and then begins to pull over and slow down. The video does not clearly show whether

5

the driver (Santos), was reaching for anything in the passenger compartment as the Camry slows to a stop.

Welty's dashcam and bodycam footage both show that, as the vehicle stops, Officer Welty exits his unmarked vehicle, yanks Santos's door open, grabs Santos's left arm, pulls him from the vehicle, and briefly spins Santos around causing him to lose balance and fall backwards onto his buttocks before laying on his back. Welty retains control of Santos's left arm as another officer approaches and holds Santos's right arm. Together, they flip Santos on his stomach. At this point, a third officer (Detective Mondragon, according to his report) arrives to assist by holding Santos down, placing his hand either between Santos's shoulders or at the back of his neck. Once Santos is secured, he is escorted to the sidewalk. Thereafter, Welty and another officer begin searching Santos's car. Welty's bodycam footage shows him finding a small black case in the car's center console, which Welty states he believes is "drug paraphernalia" before identifying "ice" inside the case.

Finally, the authenticated records include the documents associated with Santos's visit to University Medical Center following his arrest, which state X-rays were performed on Santos's left shoulder and clavicle, and that Santos *may* take (but was not prescribed) Tylenol or Motrin for pain. The records further indicate that he should rest and keep any wounds clean with soap and water.

### C. Santos's *Spears* Testimony

The Court held a *Spears* hearing on December 19, 2019, where Santos testified and provided additional factual bases for his claims. ECF No. 12. At the time of the traffic stop, Santos was on parole for a prior state conviction (Tr. 1:46:50–:47:40) and driving a vehicle owned by his uncle. Tr. 1:49:45–:56. Santos could not recall whether the conditions of his parole required

6

him to consent to searches by law enforcement officers. Tr. 1:48:05–:25. Santos further testified that he was not aware, at the time of the incident, he had pending warrants for his arrest based on unpaid traffic citations, and that he believed his parole officer would have arrested him if he had any unpaid citations. Tr. 1:48:40–:49:45. Santos also told the Court that the charges associated with this arrest were dropped, including any charges of a parole violation, and that his current incarceration in the Texas Department of Criminal Justice arose from an unrelated federal conviction. Tr. 2:10:57–:11:22.

According to Santos, prior to the traffic stop he had left the South Plains Mall and Dollar Tree on Slide Road, travelled north on Slide, and turned west onto 50th Street. Tr. 1:50:50–:51:40. He denied having been driving on the wrong side of Slide Road prior to turning onto 50th Street. Tr. 1:51:40–:52:35. Santos stated that he heard sirens but did not see any lights because birthday balloons obstructed his view through his rear window; he asserted that he began to pull over as soon as he saw the lights from the unmarked vehicle in his side-view mirror. Tr. 1:52:35–:54:07. According to Santos, a truck swerved in front of him as he pulled over and he put his hands in the air as he saw the person in the truck approach his car. Tr. 1:54:07–:30. Santos further stated that he was looking for his driver's license and insurance in the center console when he stopped. Tr. 1:54:57–:30.

With respect to the use of force, Santos testified that he did not resist Officer Welty pulling him from the car (1:56:15–:45) and claimed that Welty grabbed him by the collar of his shirt and "slammed" him into the side of the car behind the driver's door, then a second officer arrived and they both "slammed" him to the ground onto his shoulder and face. Tr. 1:56:35–:58:03. Santos then asserted that after handcuffing him, Welty punched the side and back of Santos's head, leading to swelling in those areas. Tr. 1:58:03–2:00:15. Santos stated that the officers then lifted

7

him up and put him in the back of a vehicle. Tr. 1:58:39–55. Following these events, Santos averred that an officer took him to University Medical Center, where staff performed X-rays on his left shoulder, gave him pain medication—though he does not recall what kind—and cleaned his abrasions. Tr. 2:01:18–:03:55. Santos did not seek further treatment for his alleged injuries. Tr. 2:03:55–:04:45.

As to the alleged illegal seizure and search of himself, his car, and property, Santos indicated that he had not committed a traffic violation that would justify a stop and was not issued a citation or otherwise given a reason for the stop. Tr. 2:04:40–:06:53. Santos further alleged that the searches of his car and person were illegal because Officer Welty had no basis to stop him. Tr. 2:07:22–:08:15. The property seized from the car included birthday gifts for his daughter, two cell phones, a Versace ring, and cash, but according to Santos, officers have since returned the cash. Tr. 2:08:15–:09:35.

Santos also asserted that Officer Welty falsified his report following the arrest because Santos neither evaded arrest nor possessed any kind of drugs. Tr. 2:11:30–:12:12. When asked how this allegedly false report harmed him, Santos could not articulate any specific harm. 2:13:45–:14:15.

Santos's remaining claims involve allegations that the other Defendants conspired with Welty to violate his rights. Compl. 3. The basis for his claims against the City of Lubbock, however, was that it employed Officer Welty. Tr. 2:14:20–:52. As to Chief Gregg Stevens, Santos believed he should be held liable because he is in charge of the police department and its officers, but Santos could not provide any facts indicating Chief Stevens was personally involved in these events. Tr. 2:15:35–:17:05. When asked to describe the other officers he believed conspired with

8

Officer Welty, Santos stated that he did not believe the "third" officer on the scene did anything to violate his rights.  Tr. 2:18:27–:19:10.

In response to queries about the remedy he sought, Santos requested the return of his seized property and damages associated with his hospital bill arising from the alleged excessive force, but also stated that he was not sure what he could ask the Court to do.  2:19:20–:22:25.

### III.    Discussion

Santos raises six claims against Defendants:  (1) excessive force by Officer Welty (and, based on his *Spears* testimony, a second unnamed officer); (2) illegal seizure of his person by Welty; (3) illegal search of his vehicle by Welty; (4) illegal seizure of his property by Welty; (5) falsification of government documents by Welty; and (6) conspiracy by all Defendants to violate his rights.  Compl. 3–4.  The Court first analyzes those claims requiring dismissal before turning to those that survive initial screening.

**A.  The District Court should dismiss Santos's conspiracy claims because he conclusorily alleges the existence of a conspiracy without any supporting factual allegations, and his claims against the City of Lubbock and Chief Stevens are improperly based  on theories of respondeat superior and supervisory liability.**

**1.  Conspiracy claims**

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019).  "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.*; *Young v. Biggers*, 938 F.2d 565, 566 (5th Cir. 1991) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient."); *Chadman v. Quisenberry*, CIVIL ACTION

NO. 4:17-CV-700-Y, 2019 WL 3530422, at *6 (N.D. Tex. Aug. 2, 2019) ("Conspiracy claims under § 1983 require the claimant to plead specific facts."). "Therefore, to establish his conspiracy claim, [Santos] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights." *Montgomery*, 759 F. App'x at 314.

Santos's allegations do not support a conspiracy claim under § 1983. With respect to the officers involved in his arrest, Santos conclusorily claims that they "conspired" with Officer Welty, but he provides no facts in support of that allegation. Compl. 3. As such, the conspiracy claims against the unnamed officers and Welty should be dismissed. *Doss v. City of DeSoto*, Case No. 3:19-cv-00408-S-BT, 2020 WL 1216716, at *3 (N.D. Tex. Feb. 18, 2020), *R. & R. adopted by* 2020 WL 1187174 (N.D. Tex. Mar. 11, 2020) (recommending dismissal of plaintiff's conspiracy claim because merely alleging that defendants "'conspired' to ruin his life" was not adequate to state a claim); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (dismissing conspiracy claim because plaintiff "did not set forth specific allegations that [defendants] agreed to commit an illegal act" (internal quotation marks omitted)); *Simmons v. Jackson*, Case No. 3:15-cv-1700-S-BT, 2018 WL 4574975, at *4 (N.D. Tex. Sept. 6, 2018), *R. & R. adopted by* 2018 WL 4568802 (N.D. Tex. Sept. 24, 2018) (recommending dismissal of conspiracy claim because plaintiff's allegations were conclusory).

**2. Supervisory liability claims**

As to the City of Lubbock and Chief Stevens, Santos admits that his claims are based solely on the fact that Chief Stevens is the Lubbock Police Department Chief and the City of Lubbock employs Officer Welty. Tr. 2:14:20–:52; Tr. 2:15:35–:17:05. It is well established that a supervisory official is not liable for the acts of his subordinates unless: (1) he affirmatively

participated in an act that caused a constitutional deprivation, or (2) he implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A plaintiff must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as supervisors "are not liable for the actions of their subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. Because Santos does not allege (much less provide any supporting facts) that Chief Stevens personally participated in any alleged constitutional violation or implemented an unconstitutional policy, the claim against him should be dismissed.

Further, § 1983 does not permit a theory of liability premised on respondeat superior. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."); *Thompkins*, 828 F.2d at 303 ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); *see also Stone v. Gusman*, CIVIL ACTION NO. 16-1321, 2017 WL 3037632, at *2 (E.D. La. June 21, 2017), *R. & R. adopted by* 2017 WL 3034362 (E.D. La. July 18, 2017) ("It is beyond cavil that a § 1983 claim cannot be based on the theory of *respondeat superior*."); *Easter v. Lafourche Par. Sheriff's Office*, Civ. A. No. 13-5797, 2014 WL 3687239, at *3 (E.D. La. July 23, 2014) ("[P]laintiff appears to be attempting to hold [the private corporation providing the jail's medical services] liable based on a theory of vicarious liability, which simply is not allowed in an action filed pursuant to 42 U.S.C. § 1983."). Santos admitted during the *Spears* hearing that his claim against the City of Lubbock relies on the fact that the City of Lubbock employs Officer Welty and is therefore responsible for his allegedly unconstitutional actions. Tr. 2:14:20–:52; Tr. 2:15:35–:17:05. As such, the District Court should also dismiss the claim against the City of Lubbock.

**B. The District Court should dismiss Santos's falsified documents claim against Officer Welty because Santos identifies no constitutional basis for his claim, while the Fourth Amendment specifically proscribes the alleged underlying conduct, and Santos does not allege any harm arising from the purportedly inaccurate police report.**

Santos claims Welty falsified his post-incident report in stating that Santos evaded arrest and possessed drugs or drug paraphernalia; however, Santos identifies no specific constitutional right that Welty's alleged conduct violated. Santos's factual assertions fail to state a § 1983 claim for at least two reasons. First, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Jones v. Perez*, 3:16-CV-2835-D, 2017 WL 4238700, at *10 (N.D. Tex. Sept. 25, 2017) (internal quotations omitted) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, Santos basically alleges Officer Welty falsified his post-incident report to provide justification for the claimed unlawful stop, search, and seizure. "Because the Fourth Amendment protects against the type of conduct [Santos] alleges in support" of his constitutional claim (whether based on substantive due process or some other generalized constitutional protection), "this claim is 'covered by' the Fourth Amendment and should be analyzed only under that constitutional provision." *Id.* at 11 (citation omitted). The crux of Santos's claims arises from the facts surrounding the disputed traffic stop and ensuing arrest and search, and Officer Welty's alleged effort to provide post-hoc justification for his actions. As such, Santos cannot state a cognizable independent claim for the alleged preparation of a falsified report.

Second, Santos's claim fails because he pleads no facts identifying any legal harm or consequence flowing from such alleged false statements. Claims related to officers allegedly falsifying documents related to an arrestee's conduct are governed by cases at two opposite ends of the spectrum.

On one hand, "[t]he mere existence of a falsified police report does not, by itself, violate a plaintiff's federal rights" (*Ballard v. Hedwig Vill. Police Dep't*, Civil Action No. H-08-0567, 2009 WL 2900737, at *4 (S.D. Tex. Sept. 2, 2009)) because "there is no right to a completely accurate police report." *Smith v. Patri*, 99 F. App'x 497, 498 (5th Cir. 2004) (finding no violation of a clearly established constitutional right where plaintiff alleged jailer filed a "false" report concerning his possession of crack cocaine and "improperly" searched him); *see also Rich v. Palko*, 920 F.3d 288, 297–98 (5th Cir.), *cert. denied*, 140 S. Ct. 388 (2019) (holding that plaintiff claiming officers prepared a false after-the-fact report to support an allegedly unlawful arrest did not show violation of a clearly established constitutional right).

Conversely, the Fifth Circuit has held that "[d]eliberate framing of a person by the state offends the most strongly held values of our nation," "shocks the conscience," and violates a plaintiff's substantive due process rights, even where the person was not convicted of the falsified offenses. *Cole v. Carson*, 802 F.3d 752, 772–73 (5th Cir. 2015), *vacated and remanded by* 137 S. Ct. 497 (2016), *holding partially reinstated by* 905 F.3d 334 (5th Cir. 2018), *reinstatement recognized by* 935 F.3d 444 (5th Cir. 2019) (en banc). *Cole* noted that only "[e]xecutive action [that] shock[s] the conscience . . . violate[s] substantive due process." *Id.* at 771 (citing *Doe ex rel. Magee v. Covington Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012)). *Cole* further describes conduct that shocks the conscience as including that which: (1) "violates the decencies of civilized conduct"; (2) "is so brutal and offensive that it does not comport with traditional ideas of fair play and decency"; (3) "interferes with rights implicit in the concept of ordered liberty"; or (4) "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 771–72 (internal brackets and quotation marks omitted).

As previously noted, Santos identifies no specific constitutional right he claims Welty violated by purportedly falsifying his report. Even liberally construing Santos's allegations as attempting to state a due process violation, however, his claim falls within the former rule, not the latter. Initially the Court notes that Santos makes no allegation that Welty's allegedly falsified report was used to bring false charges against Santos. Absent such allegations Santos's claim should be dismissed. *See Ramirez v. Killian*, 2:18-CV-107-D-BR, 2018 WL 6706094, at *7 (N.D. Tex. Nov. 5, 2018), *R. & R. adopted by* 2:18-CV-107-D, 2018 WL 6696486 (N.D. Tex. Dec. 20, 2018) (recommending sua sponte dismissal of substantive due process claim where plaintiffs failed to allege that falsified arrest report was used to file charges).

More importantly, Santos alleges *no legal harm or consequence* arising from the claimed falsified report and admits charges associated with his arrest were dropped, including any associated with a parole violation. Tr. 2:13:45–:14:15; 2:10:57–:11:22. His allegations therefore again fall short of a cognizable constitutional claim. *See Rich*, 920 F.3d at 297–98 (concluding that plaintiff's theory was that the "inaccurate post-incident report was designed to provide probable cause to support a warrantless detention" but failed to identify any constitutional right violated by the report); *Myart v. Mach*, SA-19-CV-00507-OLG, 2019 WL 5556558, at *13 (W.D. Tex. Oct. 28, 2019) (noting that, among other things, plaintiff did not allege how the purportedly false reports violated his rights).[6] The absence of any allegation of specific harm or consequence arising from the allegedly false report requires a finding that Welty's actions, even if true, qualify more as possible discrepancies, inaccuracies, and omissions in an after-the-fact police report that,

---

[6] The *Myart* court distinguished the prisoner's claim based on an alleged falsified police report, where he asserted no facts demonstrating how the report violated his rights, from the situation where a knowingly falsified police report resulted in the wrongful conviction of the plaintiff, thus violating his due process rights. *Id.* Here, Santos has not and cannot allege such facts as he admits the charges associated with this arrest were dropped, and that his current incarceration arises from a conviction on federal charges.

based on the allegations before the Court, fail to demonstrate a resulting legal consequence or constitutional violation. *See Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980) (affirming dismissal of § 1983 claim based on alleged false police report and holding that in evaluating such claims, focus "should be on the consequences, if any, not on the mere existence of the report . . . [and] the mere filing" of a false report does not, without more, "create a right of action in damages"). As such, the undersigned recommends dismissal of Santos's claim against Welty for allegedly falsifying his report. *See Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 505 (W.D. La. 2001) (granting summary judgment on false reports claim because plaintiff failed to allege harm and noting that "falsified police reports are only actionable under § 1983 if those reports result in the deprivation of life, liberty or property").

**C. The District Court should order Officer Welty and Detective Mondragon[7] to answer Santos's allegations that they used excessive force—although the video evidence contradicts Santos's most egregious claims, a liberal construction of his remaining allegations requires additional record development to evaluate his Fourth Amendment claim.**

To succeed on a § 1983 claim for excessive force, Santos must prove: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (internal quotation marks omitted). The key question is whether "the alleged use of force was objectively unreasonable under the circumstances." *Robinson v. City of Garland*, Civil Action No. 3:10-CV-2496-M, 2015 WL 9591443, at *6 (N.D. Tex. Nov. 23, 2015), *R. & R. adopted by* 2015 WL 9593623 (N.D. Tex. Dec. 31, 2015). "To gauge the objective reasonableness of the force

---

[7] From the Court's review of the video and authenticated records (including Detective Mondragon's own report), he is the individual about whom Santos complains, alleging he physically pushed Santos's neck or face down, contributing in part to his claimed injuries. By separate order, the Court has directed the City of Lubbock to file within seven days a notice (1) confirming Detective Mondragon is the individual in the video who pushes Santos's neck or upper body to the ground during the arrest or (2) correctly identifying the individual, if it is not in fact Detective Mondragon.

used, the courts 'must balance the amount of force used against the need for force.'" *Id.* (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).  Factors the court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

During the *Spears* hearing, Santos alleged that Officer Welty grabbed him by the collar of his shirt and "slammed" him into the side of the car behind the driver's door before a second officer arrived and they both "slammed" him to the ground onto his shoulder and face.  Tr. 1:56:35–:58:03.  Santos further claimed that after handcuffing him, Welty punched the side and back of Santos's head, leading to swelling in those areas.  Tr. 1:58:03–2:00:15.  Taking these allegations as true, there would be little doubt that Santos's claim against Welty and the second officer would survive screening.  However, the Court is under no obligation to presume a plaintiff's allegations are true where video evidence clearly contradicts his story.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the district court did not have to accept the plaintiff's description of his driving where it was "blatantly contradicted by" video from the police car's dashcam); *Funari v. Warden of James V. Allred Unit*, No. 7:12-CV-011-O-DA, 2014 WL 1168924, at *2 (N.D. Tex. Mar. 20, 2014) (finding the court could rely on video of the event when it blatantly contradicted the "visible fiction" offered by the plaintiff); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)) ("In the context of cases involving video evidence, this Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts.").

The dashcam and bodycam footage clearly demonstrate that neither Officer Welty nor the second officer "slammed" Santos into either the car or the ground, nor did any officer punch or

otherwise strike Santos in the head at any point, much less while he was cuffed.  Instead, the video shows Officer Welty grabbing Santos's left arm, pulling him from the vehicle, and Santos losing his balance as he spins around, thereafter falling on his buttocks and to his back.  Another officer then rushes in and grabs Santos's right arm while Officer Welty retains control of his left.  Santos is flipped over on his stomach and a third officer then appears to hold Santos's face or neck down while Officer Welty handcuffs him.

While Santos's most egregious allegations are clearly contradicted by the video, the record as currently developed, and for screening purposes only, requires an answer or other response from the two arresting officers as to Santos's excessive force claim.  Accepting Santos's remaining allegations as true, he claims he pulled his car over as soon as he heard the officer's siren.  He further alleges he could not (1) see the flashing lights because birthday balloons blocked his line of sight or (2) hear the siren because he is partially deaf in one or both ears.  Juxtaposed against Santos's rather benign account (and ignoring for screening purposes his lack of veracity in describing other aspects of the incident) is information contained in the authenticated records that could justify certain degrees of force under the circumstances alleged, e.g., the basis for initiating the stop (driving on the wrong side of the road), Santos's actions in the car prior to his removal, what the arresting officers could observe that does not appear in the body or dashcam video, and Santos's prior criminal history.

The Court's consideration of such factors in evaluating the propriety of the officers' conduct, who forcibly removed and arrested Santos, would at this stage require fact finding, credibility determinations, or both, which the Court cannot do during the screening process.  For example, Officer Welty's post-incident report appears to suggest he used force because he perceived Santos as reaching for something in the passenger compartment prior to stopping and

because Santos did not stop promptly. The video, however, does not show Santos's actions in the vehicle prior to Welty extracting him. And while the video certainly demonstrates more than a brief delay in Santos pulling over after Officer Welty activated his lights and siren, the justification for the level of physical force used in removing Santos would, at least based on the current record, turn on factors such as whether Santos in fact drove on the wrong side of the road (which he denies and is not shown in the video), possibly indicating an inebriated or reckless driver, and whether his criminal background provided a basis for the officers to believe such force was required.

While Santos does not claim any significant injury, he does allege scrapes, abrasions, and an injury to this shoulder that, according to the records, resulted in transport to the hospital for an X-ray. The lack of any additional factual allegations on this element could give rise to a finding of de minimis injury and require dismissal; however, under the circumstances of this case and record as currently developed, the Court finds such assertions sufficient to survive screening. Accepting Santos's factual allegations as true, i.e., the ones not expressly contradicted by the video, he did not commit a traffic violation and pulled over as soon as he saw Officer Welty's lights and heard the siren. The use of force demonstrated on the video, e.g., the forceful opening of Santos's door and involuntary removal under such purportedly benign circumstances, and which allegedly caused some degree of physical injury, could conceivably give rise to a viable § 1983 claim. "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)).

As noted above, additional development of the facts may further undermine Santos's version of events and justify the degree of force utilized by the officers in apprehending Santos.

18

However, viewing the information currently available to the Court in the light most favorable to Santos, and taking his allegations as true insofar as the video does not contradict them, proper screening requires, at least preliminarily, allowing Santos's claims to proceed. As such, the undersigned recommends that the District Court order Officer Welty and the second officer to answer Santos's allegations pertaining to this claim.

> **D. The District Court should order Officer Welty to answer Santos's claim that he illegally seized and searched Santos's person, car, and property because the dashcam and bodycam footage do not clearly show Santos committed a traffic violation or that officers were otherwise justified in stopping Santos.**

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotation marks omitted). "Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *Anderton v. Tex. Parks & Wildlife Dep't*, Civil Action No. 3:13-CV-01641-N, 2014 WL 11281086, at *9 (N.D. Tex. Feb. 14, 2014) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)) (internal quotation marks omitted). "After a determination that there was a seizure, 'whether the Amendment was in fact violated requires determining if the seizure was reasonable.'" *Id.* at *10 (internal brackets and ellipsis omitted) (quoting *Soldal v. Cook Cty.*, 506 U.S. 56, 58 (1992)). Having reviewed the dashcam and bodycam footage, it is quite clear that Santos was seized[8] and both his person and car were searched. Santos further has alleged that officers seized his property within the car, including birthday gifts for his daughter, two cell phones, and a Versace ring.[9] Tr. 2:08:15–:09:35. As to the stop itself, Santos alleges that he did nothing prior to the traffic stop to justify it, and states that even though the report claims he

---

[8] For Fourth Amendment purposes, traffic stops are a type of seizure. *Lopez-Moreno*, 420 F.3d at 430.

[9] Santos also claims that officers seized cash but ultimately returned it to him. Tr. 2:08:15–:09:35.

committed a traffic violation, Officer Welty never issued a citation or even told Santos the basis for the stop. Tr. 2:05:40–:06:53.

The undersigned recommends that the District Court order Officer Welty to answer the allegations pertaining to these claims. Although Welty's police report indicates that Sergeant Hook observed Santos driving on the wrong side of the road, the video available to the Court does not show this violation. As such, the video does not clearly refute Santos's claim that he had not committed a traffic violation that would justify the stop. *See Scott*, 550 U.S. at 380 (holding that the district court did not have to accept the plaintiff's description of his driving where it was "blatantly contradicted by" video from the police car's dashcam). In addition, without more information, the Court is unable to effectively determine whether the searches and seizures of Santos's person, car, and property fall within one of the defined exceptions to the Fourth Amendment's warrant requirement,[10] or whether a condition of Santos's probation authorized searches by law enforcement at any time. Even though Welty's post-incident report and probable cause affidavit provide varying grounds for the search, the Court cannot determine the reasonableness of the search and seizure at this juncture without going beyond the pleadings and engaging in fact finding or making improper credibility determinations.[11] Lastly, the records do not assist the Court in determining whether the alleged seizure of birthday gifts, cell phones, and a ring—which Santos implicitly alleges were not returned—was reasonable. As such, the undersigned recommends that the District Court order Officer Welty to answer the allegations

---

[10] Although Santos was not the car's owner, the undersigned assumes, without deciding, that Santos lawfully possessed the car and therefore has standing to challenge the search. There is no indication in the record that the car was stolen or that Santos did not have his uncle's consent to be driving it. *See United States v. Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990) ("[W]here a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search.").

[11] Exceptions such as search incident to arrest, inventory search, and an automobile search could provide constitutional justification for the searches and seizures at issue; however, such a finding requires record development beyond that presently before the Court.

pertaining to Santos's claim that he, his car, and his property were searched and seized in violation of the Fourth Amendment.

## IV.    Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice Santos's claims that Officer Welty, other officers, the City of Lubbock, and Chief Stevens conspired to violate Santos's rights. The undersigned further recommends that the United States District Court dismiss with prejudice Santos's claim seeking damages on the basis that Officer Welty falsified his police report.

As to the remaining claims of excessive force and illegal searches and seizures of Santos's person and property, however, the undersigned recommends that the United States District Court order Officer Welty to answer or otherwise plead to these claims. The undersigned further recommends that the United States District Court order Detective Mondragon, or the officer identified by the City of Lubbock in response to this Court's order of even date, to answer or otherwise plead to Santos's claim of excessive force. The Court expresses no opinion as to the lawfulness of the Defendants' alleged actions by identifying them or requiring an answer, and nothing in this recommendation constitutes an adverse finding as to their conduct. This recommendation is simply a product of the screening process and current state of the record.

## V.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made,

state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: April 27, 2020.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**

22